LETTS, Judge.
Before us is an appeal by Palm Beach County, protesting the trial judge’s ruling in favor of seventeen municipalities, which ruling required remittance to the cities of one-half of all ad valorem taxes collected from them by the County and used for roads and bridges within the County. Also protested was the lower court’s ruling that non ad valorem taxes expended on roads and bridges should likewise be shared. We reverse in part.
This opinion will not be of lasting significance because the controlling statute has now been repealed. Nonetheless, since we are required to reverse, an opinion is necessary and we must, at a minimum, discuss as many of the facts and as much of the law as are essential to support our conclusions.
The genesis of this controversy arises under section 336.59, Florida Statutes (1983), which we conclude encompasses construction as well as maintenance and repair of roads and bridges. We reproduce it in its entirety as follows:
336.59 Levy of tax for road and bridge purposes; proportion to municipalities.—
(1) The commissioners shall levy a tax not to exceed 10 mills on a dollar on all property in their county each year for road and bridge purposes. Such tax, when collected, shall be paid over to the county depository and kept in a separate fund, which fund shall not be expended for any other purpose than for work on the public roads and bridges in the county, and for the payment of the salaries of employees engaged in road and bridge work, and in providing the necessary tools, materials, implements, and equipment and for the necessary work on such roads and bridges.
(2) One-half the amount realized from such special tax on the property in incorporated cities and towns shall be turned over to such cities, urban service districts, and towns, in accordance with the schedule required in s. 197.0124, to be used in constructing, repairing, and maintaining the roads, streets, and bridges thereof, as may be provided by the ordinances of such cities and towns; however, any such cities and towns that have no jurisdictional responsibility for streets, roads, or bridges are authorized to exchange the funds received under this section for like amounts of unrestricted county funds.
Pursuant to this statute, the County, in fiscal year 1980-81, levied as much as .9102 mills representing approximately nine and a quarter million dollars which it duly shared with the municipalities. Thereafter, commencing in fiscal year 1981-82, the County dramatically reduced this millage and by the fiscal year 1982-83, only .0001 mills was levied, representing a total of less than twenty-seven thousand five hundred dollars. Thereafter, in fiscal year 1983-84, the same .0001 millage produced the negligible sum of two thousand three hundred dollars or a virtual one hundred percent wipe-out (99.7%) of the sums formerly shared under the provisions of the statute. That is not to say that the County ceased to spend monies on roads and bridges. On the contrary, it spent more *130 than ever on them. However, the cash necessary to do so was appropriated from other sources. We will have more to say about these alternate sources hereafter.
There is no doubt that until the applicable statute was repealed, Palm Beach County was required to levy a tax thereunder and that funds used for roads and bridges were not permitted to be obtained “entirely from revenue other than the mandated ad valorem taxation.” City of Orlando v. County of Orange, 276 So.2d 41, 43 (Fla.1973). However, as Palm Beach County quickly points out, quoting from the same case, “the Legislature has not set any minimum millage for this purpose.” Id. at 44 (emphasis supplied). Thus the County argues the .0001 millage is a sufficient assessment to constitute a “minimum.” We disagree. In the final analysis, a levy designed to be shared among all the municipalities in Palm Beach County, totalling less than $1,200, is absurd. Thus, based on the record before us, we not only agree with the trial judge that the County deliberately “juggled its budget for the purpose of defeating the mandatory provisions of § 336.59,” but we go further and label the .0001 millage a “sham” resulting, as a practical matter, in no tax at all. True, the trial judge did not go so far as to actually label the .0001 millage a sham, but his ruling bespoke it as such.
Having concluded the assessed tax under section 336.59 for the two latter fiscal years to be no tax at all, it follows that those assessments did not rise even to a “minimum.” It therefore also follows that the funds expended on roads and bridges during the fiscal years 1982-83 and 1983-84 were obtained “entirely from revenues other than the mandated ad valorem taxation.” This evasion of the statute runs contra to the dictates of our Supreme Court laid down in the Orlando-Orange decision. However, as to the fiscal years prior to 1982-83 we cannot conclude that the considerable millages assessed under the statute were the equivalent of no assessment at all. Accordingly, while we affirm the trial judge’s findings for the fiscal years 1982-83 and 1983-84, we reverse him as to all pertinent fiscal years prior thereto.
Even though we have concluded that the .0001 millage assessments violate both section 336.59 and the" case law, it does not follow that we should in toto affirm the balance of the final judgment below, because its conclusions range far and beyond that which was proper. For example, there was no legal basis for the entry of a judgment against the County totalling $3,800,484 flowing from sales tax revenues, regardless of whether they were subsequently paid into the roads and bridges fund. As the Supreme Court squarely held in City of Waldo v. Alachua County, 249 So.2d 419 (Fla.1971), the budgeting of unrestricted non -ad valorem revenues for the benefit of roads and bridges is permissible, but such a budgeting does not require a sharing of resulting revenues with the municipalities. It is only ad valo-rem revenues collected from the municipalities and used for roads and bridges that require such a sharing.
Recapitulating in the pursuit of clarity what we have held, we summarize as follows:
1. The County did not violate the provisions of section 336.59 for any of the fiscal years pertinent to this lawsuit pri- or to 1982-83. There is, therefore, no further sharing due and owing for any of those prior years other than mandated by the statute.
2. The County did violate the provisions of section 336.59 for the fiscal years 1982-83 and 1983-84. Therefore, a sharing must be made for these two years among the seventeen municipalities which participated in this lawsuit.
3. The sharing to be made in paragraph 2 above must be based solely on the revenues from ad valorem taxes levied against the seventeen municipalities and spent by the County for the construction, maintenance and repair of roads and bridges. Included in this sharing would be any sums already remitted under section 336.59.
4. Sources of revenue made available to the County by other than ad valorem *131 taxes need not be shared. For example, none of the funds expended on roads and bridges and obtained from either the gas tax, the sales tax or federal revenue sharing need be turned over to the municipalities.
We find no merit in the appellant’s assertion that the doctrine of sovereign immunity is applicable to this case. We are also not persuaded that the municipalities were barred by laches from engaging in this litigation.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
DELL, J., concurs.
ANSTEAD, J., specially concurs with opinion.